UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GABRIEL L. GARCIA,<br><br>                              Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                              Defendant. | Case No. 3:13-cv-05500-RJB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for May 9, 2014 |

     Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

### FACTUAL AND PROCEDURAL HISTORY

     On April 20, 2010, plaintiff filed an application for supplemental security income. On April, 21, 2010, plaintiff filed an application for disability insurance benefits. In both applications, plaintiff alleged disability beginning February 5, 2009, due to abdominal nerve

REPORT AND RECOMMENDATION - 1

entrapment and chronic pain.  See Administrative Record ("AR") 167-74, 189-97.  Plaintiff's applications were denied upon initial administrative review and on reconsideration.  See AR 91-94, 99-117.  A hearing was held before an administrative law judge ("ALJ") on March 30, 2012, at which plaintiff, represented by a non-attorney representative, appeared and testified, as did Todd Gendreau, a vocational expert.  See AR 41-85.

On April 20, 2012, the ALJ issued a decision in which plaintiff was determined to be not disabled.  See AR 21-40.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 6, 2013, making the ALJ's decision defendant's final decision.  See AR 1-7; see also 20 C.F.R. § 404.981, § 416.1481.  The ALJ's decision therefore became defendant's final decision after sixty days.  Id.  On June 27, 2013, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision.  See Dkt. No. 4.  The administrative record was filed with the Court on August 27, 2013.  See Dkt. No. 14.  The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for a finding of disability or, in the alternative, further administrative proceedings with instructions to re-evaluate the medical and testimonial evidence, because the ALJ erred:

(1) in evaluating plaintiff's severe impairments at step two of the sequential evaluation;

(2) in evaluating the medical opinion evidence;

(3) in rejecting plaintiff's testimony and the lay witness testimony of plaintiff's wife; and

(4) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in finding plaintiff's interstitial cystitis non-severe

REPORT AND RECOMMENDATION - 2

and in finding plaintiff's testimony and the lay testimony of plaintiff's wife not credible. For the reasons set forth below, the undersigned recommends defendant's decision should be reversed and this matter should be remanded for further administrative proceedings and to reevaluate the medical and testimonial evidence in light of the new evidence submitted to the Appeals Council. Further development of the functional limitations caused by plaintiff's interstitial cystitis is also warranted in this case.

## DISCUSSION

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Sec'y of Health and Human Serv., 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence

REPORT AND RECOMMENDATION - 3

admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.      The ALJ's Step Two Determination

Plaintiff argues the ALJ erred in finding that plaintiff's interstitial cystitis ("IC") was not a severe impairment. EFC No. 17, p. 3-6. Defendant responds that the ALJ's conclusions at step-two were reasonable and that plaintiff fails to point to any limitations not addressed in the residual functional capacity determination. The Commissioner maintains plaintiff was not harmed by any errors committed at step-two.

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920. The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. See Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996);

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." Social Security Ruling ("SSR") 85-28, 1985 WL 56856 *3; see also Smolen, 80 F.3d at 1290; Yuckert v. Bowen, 841

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

F.2d 303, 306 (9th Cir.1988).  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities.  20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also SSR 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.  Plaintiff has the burden of proving his "impairments or their symptoms affect his ability to perform basic work activities."  Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

Plaintiff also bears the burden to establish that the severe impairment is expected to last for at least twelve continuous months.  20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.912(a); Bowen v. Yuckert, 482 U.S. 137, 146 (1987); see also Tidwell, 161 F.3d at 601 (citing Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995)). Any impairment that is not expected to last continuously for twelve months does not satisfy the requirement. 20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.912(a); Roberts, 66 F.3d at 182.

The ALJ found plaintiff's IC did not meet the durational requirement to be a severe impairment because plaintiff's IC was not diagnosed until February 2012, just a few months prior to the date of the ALJ decision.   AR 27.   Plaintiff argues the ALJ misinterpreted the 12-month durational requirement by failing to recognize that impairments expected to last for at least 12 continuous months may also satisfy this requirement.  Dkt. No. 17, p 5-6.  As defendant concedes, evidence submitted to the Appeals Council suggests plaintiff's diagnosis of IC was retroactive.  Dkt. No.  20, p. 17.  See also Brewes v. Comm'r Soc. Sec. Admin, 682 F.3d 1157, 1163 (9th Cir. 2012) (holding that evidence submitted for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ decision, becomes part of the

REPORT AND RECOMMENDATION - 5

administrative record subject to district court review). In this new evidence, Plaintiff's treating urologist Stephen Reznicek, M.D., opined plaintiff's IC could reasonably be expected to cause plaintiff to need restroom breaks—five to ten times per day lasting for five to ten minutes each—as far back as February 2009. AR 782. Dr. Reznicek's opinion supports that plaintiff's IC had more than a minimal effect on plaintiff's ability to work for at least three years prior to the ALJ decision. For these reasons, plaintiff's IC is a severe impairment. SSR 85-28, 1985 WL 56856 *3; see also Smolen, 80 F.3d at 1290; Yuckert, 841 F.2d at 306.

This error is significant because the vocational expert ("VE") testified that an individual who needed to take unscheduled work breaks to use the bathroom approximately five to ten times a day for five to ten minutes each time would not be able to sustain competitive employment. AR 83. Defendant maintains this error was harmless because Dr. Reznicek's opinion did not specifically assess plaintiff's level of limitation and was not clearly contrary to the ALJ's findings regarding plaintiff's need to use the restroom. Dkt. No. 20, p. 17.

Based on the VE testimony, the Court finds the Commissioner's failure to accommodate Dr. Reznicek's limitations was reversible error. Although Dr. Reznicek's opinion is not entirely contrary to the ALJ's residual functional capacity determination that plaintiff would need two additional restroom breaks during the work day—for a total of five breaks during a normal work day— the RFC provides less than five minutes each for these additional breaks. AR 27. In contrast, Dr. Reznicek opines plaintiff would require five to ten minutes at each break. AR 782. For this reason, remand for further development of the record regarding the functional limitations caused by plaintiff's IC and the impact these limitations would have on plaintiff's ability to perform work activities is appropriate.

REPORT AND RECOMMENDATION - 6

II.     The ALJ's Assessment of Plaintiff's Credibility

The ALJ found plaintiff not credible because plaintiff's testimony was not fully corroborated by the treatment record and inconsistent with contemporaneous reports regarding plaintiff's functioning. AR 28. The ALJ also rejected plaintiff's testimony because inconsistent statements contained in various reports to clinicians and the Administration shed doubt on the reliability of plaintiff's statements. AR 28.

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen v. Heckler, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284. The

REPORT AND RECOMMENDATION - 7

ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The undersigned's examination of the record shows that the ALJ erred in characterizing statements and documents contained in the record to reach the conclusion that plaintiff's testimony was not credible. The Court finds the ALJ's credibility determination contained legal errors and was not supported by substantial evidence in the record.

A. Consistency of plaintiff's testimony with the treatment record

In finding plaintiff not credible, the ALJ notes that the objective medical evidence did not reveal a clear etiology for plaintiff's abdominal pain. AR 29. The ALJ characterizes plaintiff's medical record as mostly benign. AR 29-30. This rationale, however, fails to properly consider plaintiff's IC diagnosis, which could have been the etiology of plaintiff's chronic abdominal pain. This is significant in light of Dr. Reznicek's opinion that plaintiff's IC caused functional limitations beginning in 2009.

> IC is a complex, chronic bladder disorder characterized by urinary frequency, urinary urgency, and pelvic pain…. The diagnosis [of IC] is one of exclusion. A physician must rule out other conditions before making a diagnosis of IC… The symptoms of IC are similar to those of other disorders, such as … neurological disorders. Symptoms of IC vary both in kind and in intensity from individual to individual, and even in the same individual. The three most common symptoms are an urgent need to urinate (urgency), a frequent need to urinate (frequency), and pain in the bladder and surrounding pelvic region… The pain may range from mild discomfort to extreme distress. SSR 02-2P, 2002 WL 32063799*1.

Moreover, the diagnosis of IC is one of exclusion. Id. *1. A physician must rule out other conditions before making a diagnosis of IC. Id. For this reason, the ALJ's references to plaintiff's normal EGD, colonoscopy, endoscopy, ultrasound, gastric emptying study and x-rays do not constitute substantial evidence to find plaintiff not credible. See AR 29.

Additionally, the ALJ fails to provide proper context for plaintiff's "benign" examination

REPORT AND RECOMMENDATION - 8

findings.  For example, the ALJ references plaintiff's March 2009 hospitalization for bowel obstruction and notes plaintiff had "no palpable mass, positive bowel tones, and a soft, non-distended abdomen…[and]  no rebounding or guarding." AR 29 (citing AR 520-21).   When read in context of the treating physician's overall assessment of plaintiff's condition, the record supports a more complicated picture.

> [Plaintiff] is a 32-year-old male with a history of gastroschisis requiring multiple GI surgical operations in his early infancy.  At this time, his clinical presentation of symptoms (inability to pass flatus or to have a bowel movement for several days) suggests an obstructive component, particularly, given his multiple surgeries and adhesions.  He is status post balloon dilation of what appears to be the pylorus.  Reportedly, [plaintiff] had not found improvement with his symptoms of nausea, vomiting or bowel habits after the balloon dilation.  However, right now, given his multiple operations, it is difficult to determine what his exact anatomy is, and/or if there is any evidence of obstruction, mass, lesion or stricture elsewhere throughout his small bowel.  AR 521-22.

An ALJ may not justify a decision "by not fully accounting for the context of materials or all parts of the testimony and reports." Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir 1998).  As in Reddick, 157 F.3 at 723, the ALJ's approach and conclusions in this case do not fully account for the context of materials or all parts of the medical reports.

Similarly, the ALJ relies on an August 2011 treatment note from plaintiff's gastroenterologist Rodney Joe, M.D., to support the conclusion that the etiology of plaintiff's abdominal pain was unclear.  AR 30 (citing AR 709-10).  As the ALJ points out, Dr. Joe diagnosed claimant with diverticulitis and abdominal cutaneous nerve entrapment but still thought the etiology of plaintiff's pain was unclear. AR 30 (citing AR 709-10).   At the same visit, however, Dr. Joe also noted: "I would also wonder if some of his symptoms are due to urologic issues… I will have his discuss this with Dr. Kato, who can make a referral to a local urologist in Aberdeen." AR 710.  Shortly thereafter, as a result of this urology referral, plaintiff was treated by Dr. Reznicek and diagnosed with IC, a urologic impairment.

REPORT AND RECOMMENDATION - 9

In characterizing the treatment notes of Dr. Reznicek, the ALJ again provides incomplete context for the relevant evidence. In rejecting plaintiff's pain complaints as not supported by the medical record, ALJ noted that following normal bladder imaging studies, Dr. Reznicek attributed plaintiff's urinary difficulties to plaintiff's use of narcotic medications. AR 30 (citing AR 746). The ALJ failed, however, to provide full context for Dr. Reznicek's statement. Dr. Reznicek also wrote: "I suspect that this [atonic bladder and dysuria] is due to the Fentanyl, but with a right atrophic kidney, I would like to make sure [plaintiff] does not have any other congenital issues." AR 746. As a result of this concern, Dr. Reznicek ordered a cystoscopy to rule out other congenital issues. AR 746, 748-49. Based on results of the cystoscopy, Dr. Rezincek diagnosed plaintiff with IC. AR 748-49. The ALJ fails, however, to acknowledge the relevance of this diagnosis to plaintiff's pain complaints.

In reaching his determination that plaintiff was not credible due to inconsistencies with the medical record, the ALJ failed to provide appropriate context for medical findings and failed to fully account for the nature of plaintiff's abdominal impairments and their symptoms. For these reasons, the ALJ's finding that plaintiff's testimony was inconsistent with the treatment record is not supported by substantial evidence.

B. Consistency of plaintiff's testimony with contemporaneous reports of plaintiff's functioning

The ALJ also rejected plaintiff's claims of debilitated functioning because these claims were inconsistent with contemporaneous reports of plaintiff's actual functioning. AR 30. In support of this rational, the ALJ cites to isolated statements and observations. For example: single references made by plaintiff in 2009 regarding driving to California, being in a wedding and chopping wood; a single observation of plaintiff pacing around a hallway during an inpatient psychiatric stay in 2011; and, during the same inpatient psychiatric stay, plaintiff's response on

REPORT AND RECOMMENDATION - 10

an intake questionnaire that he was "good at" hunting deer and grouse. AR 30 (citing AR 287, 289, 631, 677).

The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." Id. Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7. The Court cautioned, however, that a plaintiff need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. Disability claimants "should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722. Under the second ground identified by the Court in Orn, a claimant's activities of daily living can "contradict his other testimony" and form the basis for an adverse credibility determination. 495 F.3d at 639.

Neither ground for using activities to reject a claimant's credibility is fully supported in this case. First, the fact that plaintiff was observed pacing around a hallway during an inpatient psychiatric stay has no bearing on the credibility of his testimony. See Reddick, 157 F.3d at722 (9th Cir. 1998) (only if level of activity is inconsistent with claimant's claimed limitations would claimant's activities have any bearing on his or her credibility). The ALJ again failed to provide appropriate context for this report. The treatment record referenced by the ALJ to discredit plaintiff's testimony read:

> Guest was out in the hallway pacing around. This writer asked him if everything
> was all right and he began to sob and tell me he hasn't slept in days, his
> roommate's snoring is keeping him awake, his sleeping chair is uncomfortable,
> and if he doesn't get some rest he's going to kill himself. Guest moved to his own

REPORT AND RECOMMENDATION - 11

> room.  On the way to his room, he stopped, put his hands over his face and thankfully sobbed, "Thank you so much, thank, you thank, thank you…" AR 677.

Simply put, this single incidence of nighttime "pacing around" during a period of psychological distress does not contradict plaintiff's assertion that he is unable to walk for long periods.

The ALJ also noted that plaintiff, "on his intake form [for the psychiatric facility], noted that he enjoyed hunting as one of his hobbies." AR 30 (citing AR 631).  The ALJ again mischaracterizes the record.  Plaintiff did not list hunting as a hobby on this intake form.  Rather, on the intake questionnaire, under the headings of "empowerment" and "strengths", plaintiff was asked what he was "good at" and plaintiff responded "[r]eading history books" and "[h]unting deer and grouse." AR 631.  This section of the questionnaire also asked plaintiff to respond to the following questions: "what are you proud of?", "what have your main accomplishments been?" and "what personal strengths do you use most often?" AR 631.  In this context, plaintiff's response that he was good at hunting has no bearing on plaintiff's credibility because it offers no information about plaintiff's contemporaneous activities.  See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (only if level of activity is inconsistent with claimant's claimed limitations would claimant's activities have any bearing on his or her credibility).  Rather, plaintiff's response to the questionnaire merely indicates plaintiff's opinion regarding his personal accomplishments.

The isolated instances of traveling to California, being in a wedding and chopping wood noted by the ALJ to reject plaintiff's credibility do not satisfy the first basis identified by the Ninth Circuit in Orn, 495 F.3d 625, for rejecting a claimant's credibility based on activities.  These activities do not meet the threshold for transferable skills because there is no evidence that plaintiff regularly spent a substantial part of his days driving, attending weddings or chopping wood.  See Smolen, 80 F.3d at 1284 n.7.  (explaining that a claimant's credibility may be

REPORT AND RECOMMENDATION - 12

1  discounted if he "is able to spend a substantial part of his or her day performing household

2  chores or other activities that are transferable to a work setting.").

3        Driving to California and chopping wood, however, reasonably could be interpreted as

4  inconsistent with plaintiff's testimony regarding his functional limitations in 2009. For this

5  reason, these activities can be used under the second basis identified in Orn, 495 F.3d 625, to

6

7  reject a claimant's credibility. See also Allen, 749 F.2d at 579 (holding the Court may not

8  reverse a credibility determination where that determination is based on contradictory or

9  ambiguous evidence). This is particularly true, when considered in light of comments made by

10 plaintiff's treating doctor in 2009. Plaintiff's doctor noted: "Physical labor does exacerbate his

11 abdominal pain. Given this most likely he will not be able to return to his previous physical job.

12
   However, he should be able to do sedentary work. Patient is advised to discuss this with Social
13
   Security." AR 289. A few months later, plaintiff's doctor address this issue again: "Also, it
14
15 was discussed that [plaintiff] needs to take more proactive role in controlling his pain, including

16 avoiding obvious activities which clearly brings on his pain, like chopping woods and other

17 significantly exertional activities. It was also discussed that I cannot agree that his is chronically

18 medically disabled, when his is performing that type of physical exertion at home, but not able to

19 perform regular sedentary work." AR 287.

20
         Although this rationale may be sufficient to reject plaintiff's testimony regarding his
21
   limitations in 2009, it is not sufficient to reject plaintiff's testimony for the entire relevant period
22
23 in his claim. The ALJ points to no activities that would contradict plaintiff's testimony for the

24 remainder of the relevant period. Rather, it appears from the record that plaintiff followed his

25 doctor's 2009 advice and began taking a more proactive role in controlling his pain by avoiding

26 exacerbating activities. For this reason, this rationale does not constitute substantial evidence to

REPORT AND RECOMMENDATION - 13

reject plaintiff's symptom complaints during the entire relevant period. For this reason, this basis, although legitimate, is insufficient to constitute substantial evidence to affirm the ALJ's credibility finding. See Carmickle v. Comm'r Soc. Sec. Admin, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding that when an ALJ errs in relying on one of several reason in support of an adverse credibility determination, the error is harmless when ALJ's remaining reasoning and ultimate credibility determination are adequately supported by substantial evidence in the record).

C.  Other bases to reject plaintiff's credibility

The other bases used by the ALJ to discount plaintiff's credibility have to do with plaintiff's compliance with treatment and plaintiff's statements regarding prior drug and alcohol use. AR 31.

The ALJ reasoned that plaintiff's disinterest in controlling his symptoms was evidence of plaintiff's lack of credibility. AR 31. Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). A claimant's statements, therefore, "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or the medical reports or records show that the individual is not following the treatment as prescribed or there are no good reasons for their failure." SSR 96-7p, 1996 WL 374186 *7. On the other hand, the ALJ "must not draw any inferences" about a claimant's symptoms and their functional effects from such a failure, "without first considering any explanations" that the claimant "may provide, or other information in the case record, that may explain" that failure. Id.

To demonstrate plaintiff's disinterest in controlling his symptoms, the ALJ observed that

REPORT AND RECOMMENDATION - 14

plaintiff stopped taking his medications for a brief period in 2011.  AR 31 (citing AR 650).  The record supports that plaintiff resumed taking his medications shortly after stopping them.  See AR 687-88, 727-32. In using plaintiff's failure to take his medications as prescribed to reject plaintiff's testimony, the ALJ failed, however, to consider testimony and other information in the case record that may have explained plaintiff's behavior.  See SSR 96-7p, 1996 WL 374186 *7.  Plaintiff's abrupt stop in medication was one of the events that precipitated plaintiff's inpatient psychiatric stay in September 2011.  See generally AR 620-87, 732.  On intake at the psychiatric facility, plaintiff explained that he was unable to fill his medications and decided to stop taking them.  AR 650.  Other information in the case record also sheds light on plaintiff's failure to take his medications during this brief period.  For example, prior to his inpatient psychiatric stay, plaintiff had been talking with his doctor about stopping his narcotic medications.  AR 727.  Other information in the record demonstrates plaintiff was concerned about his ongoing use of narcotic medication and wanted to try other methods of pain relief.  AR 49, 456, 544.  Shortly after his inpatient psychiatric stay, plaintiff began tapering his narcotic medication and tranquilizer with the assistance of his doctor.  See 730, 732.

   An ALJ must not draw inferences regarding a claimant's symptoms and functional limitations without first considering a claimant's explanations and other information in the case record that may explain claimant's failure to follow treatment.  See SSR 96-7p, 1996 WL 374186 *7.  Here, the ALJ failed to consider other explanations for plaintiff's behavior.  For this reason, the ALJ's use of this incident to find plaintiff not credible is legal error.

      Finally, the ALJ points to inconsistent statements made by plaintiff regarding past drug and alcohol use to find plaintiff's testimony not credible.  AR 31.  See Smolen, 80 F.3d at 1284. (holding an ALJ may consider "ordinary techniques of credibility evaluation," such as reputation

REPORT AND RECOMMENDATION - 15

for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."). Although this is a legitimate basis for finding a claimant's testimony not credible, the ALJ's assertion that plaintiff made inconsistent statements regarding past drug and alcohol use is not supported by substantial evidence in the record. For example, the ALJ noted that plaintiff told Dr. Shin "that he had <u>never</u> used any other drug other than cigarettes..." AR 31 (citing AR 263) [emphasis added]. The ALJ also points out that plaintiff later denied current alcohol use as well as past experience with recreational drugs during a consultative evaluation in 2011. AR 31 (citing AR 693). The ALJ contrasts these statements with plaintiff's report to his mental health provider that he had previously been in substance abuse treatment. AR 31 (citing AR 553).

    First, the ALJ mischaracterized plaintiff's report to Dr. Shin. Dr. Shin's treatment note reads that "[plaintiff] denies abuse of narcotics, street drugs, or alcohol products." AR 263. The plain language of this record indicates plaintiff denied current abuse of drugs or alcohol; it is silent, however, on plaintiff's prior use or abuse of drugs and alcohol other than marijuana. AR 263. The ALJ's use of this record to show that plaintiff denied ever using any drug other than cigarettes is improper.

    The second statement cited by the ALJ—that plaintiff denied experience with recreational drugs – does arguably contradict plaintiff's report to his mental health provider that he had previously been in substance abuse treatment. <u>See</u> AR 31 (citing AR 553, 693). For this reason, it is a legitimate reason to reject plaintiff's testimony. <u>Smolen</u>, 80 F.3d at 128. In light of the other errors made by the ALJ in the credibility determination, this minor discrepancy does not provide substantial evidence to reject plaintiff's testimony. <u>See</u> <u>Carmickle</u>, 533 F.3d 1155, 1162-63 (9th Cir. 2008). Taken as a whole, the record supports that plaintiff was honest with his

REPORT AND RECOMMENDATION - 16

providers about past alcohol abuse and teenage experimentation with drugs.  See AR 553, 588.  For these reasons, the undersigned finds that the ALJ's credibility determination is not supported by substantial evidence and recommends it be reversed.

III.     <u>The ALJ's Evaluation of the Lay Witness Evidence in the Record</u>

The ALJ considered the lay witness testimony of plaintiff's wife Alisa Garcia and gave it some weight because of her relationship with plaintiff.  AR 32.  The ALJ rejected other portions of Ms. Garcia's testimony because her observations of plaintiff were those of a spouse, not a medical professional, and because her professional expertise as a respiratory therapist was different from that of a doctor or nurse and she was not an expert in the relevant areas.  AR 32.

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision.  <u>Id.</u> at 512.  The ALJ also may "draw inferences logically flowing from the evidence." <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).

Defendant concedes an ALJ may not reject a lay testimony only because it is not from an acceptable medical source.  Dkt. No. 20, p 13.  Citing <u>Molina v. Astrue</u>, 674 F.3d 1104 (9th Cir. 2012).  Defendant argues this error was harmless because the same reasoning the ALJ used to find Plaintiff not credible also applies to Ms. Garcia's statements.  Commissioner's reliance on <u>Molina</u>, 674 F.3d 1104, is misplaced.  In <u>Molina</u>, 674 F.3d at 1122, the Ninth Circuit held that the ALJ's failure to provide specific reasons for rejecting lay testimony was harmless error where

REPORT AND RECOMMENDATION - 17

testimony did not describe any more limitations than those plaintiff described, which the ALJ validly rejected. Here, the Court has found that the ALJ failed to validly reject plaintiff's testimony. Therefore, Molina, 674 F.3d at 1122, is not applicable.

Further, this is not an instance where the Court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony [of Ms. Garcia], could have reached a different disability determination." See Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir.2006). Rather, if Ms. Garcia's testimony about plaintiff's limitations was fully credited, a reasonable ALJ could have concluded that plaintiff's impairments precluded plaintiff from performing gainful employment. See Stout, 454 F.3d at 1056 (holding that ALJ's failure to consider lay witness testimony about claimant's limitations was not harmless error where a reasonable ALJ could find that such limitations would preclude gainful employment). The undersigned therefore finds that reversal is warranted based on the ALJ's failure to properly consider the lay witness testimony of Ms. Garcia.

IV.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

REPORT AND RECOMMENDATION - 18

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, they should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Further development of the record regarding the limitations caused by plaintiff's IC is necessary in this case. On remand, the ALJ should reassess plaintiff's severe impairments, plaintiff's credibility and the credibility of lay witness testimony in light of the new evidence submitted to the Appeals Council and any other evidence presented. The ALJ may also consider calling on the assistance of a medical expert in urology to determine the limitations caused by plaintiff's IC, and if appropriate, establish a disability onset date.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends that the Court reverse the ALJ's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

REPORT AND RECOMMENDATION - 19

is directed set this matter for consideration on **May 9, 2014**, as noted in the caption.

DATED this 17th day of April, 2014.

*Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20